# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16CR219 JAR (SPM) |
| | ) | |
| HURLEY WALLACE, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

In accordance with the Memorandum filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress An Out of Court Identification (Doc. 36) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that the United States' Motion for pretrial determination of the admissibility of defendant's statements (Doc. 12) be **DENIED, as moot**.

**IT IS HEREBY ORDERED** that Defendant's Motion to Produce the True Identity of A Confidential Source and Alleged Victim and Witnesses (Doc. 37) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Trial in this case has been set before the **Honorable John A. Ross** on **January 17, 2017, at 9 a.m.**

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of November, 2016.

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16CR219 JAR (SPM) |
| | ) | |
| **HURLEY WALLACE,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

This matter was referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to 28 U.S.C.§636(b). Defendant Hurley Wallace is charged in an indictment with being a felon in possession of ammunition in violation of 18 U.S.C. §922(g). The charge stems from an incident on February 11, 2016, in which Wallace allegedly shot another man during an altercation that took place inside the Grand-U-Buy convenience store in the City of St. Louis. The shooting was captured by a surveillance camera inside the store and was witnessed by multiple people who were inside the store at the time. Defendant was subsequently arrested and made statements to police, some of which may have been incriminating.

Defendant has filed a motion for the pretrial disclosure of the "true identity" of a confidential source, the victim of the shooting, and other prospective government witnesses. (Doc. 37). Defendant has also filed a motion to suppress two out-of-court identifications of defendant based on a photo array. (Doc. 36). Also pending is the United States' motion for the pretrial determination of the admissibility of statements (Doc. 12).

On October 26, 2016, the undersigned held a Pretrial Motion and Evidentiary Hearing at which defendant appeared with counsel. At the time of the hearing, the United States presented

1

testimony of Detective Benjamin Hawkins and Special Agent Rachel Capps. The United States also submitted a copy of the surveillance video (Govt. Ex. 3), as well as other evidence relating to the eyewitness identification (Govt. Exs. 1A, 1B, & 2). Wallace offered no testimony or other evidence; however, the undersigned heard arguments from both parties regarding the issues raised in Wallace's pretrial motions.

Following the evidentiary hearing, the undersigned held a status conference with counsel only. At the time of the status conference, defense counsel confirmed that defendant is not contesting the admissibility of statements made at or near the time of his arrest. *See* Doc. 45. As such, the United States' motion for the pretrial determination of the admissibility of defendant's statements should be denied as moot and will not be addressed further in this Memorandum.

Based on the written submissions of the parties, the arguments of counsel, the evidence presented, and my review of the applicable law, I make the following findings of fact and conclusions of law.

I. **FACTUAL FINDINGS**

On February 11, 2016, Detective Benjamin Hawkins ("Det. Hawkins"), a 6 ½ year veteran with the St. Louis Metropolitan Police Department, investigated a reported shooting at the Grand-U-Buy convenience store located at 2501 N. Grand in the City of St. Louis. In connection with the investigation, Detective Hawkins and other officers retrieved and made copies of a surveillance video from the store which captured the shooting.

The video is comprised of footage from three different surveillance cameras.[1] *See* Govt. Exh. 3. There is no audio. A review of video footage from the different camera angles reflects that a little after 1:20 p.m. on February 11, 2016, two men entered (or re-entered) the

---
[1] The DVD submitted by the United States appears to have five cameras on it (Camera Nos. 3, 5, 6, 7 & 8). However, the undersigned was unable to pull up or review any video footage on Camera Nos. 7 and 8.

convenience store. Their interaction on camera is consistent with an altercation and clearly drew the attention of other customers in the store, including one man who was at the cashier's counter. The curious customer can be seen from more than one angle turning away from the cashier to see what was occurring behind him.

Thereafter, several other individuals (approximately 3) entered the store and approached the two men who had originally entered. The entire group briefly stepped outside the store then almost immediately returned inside the store. Very shortly after returning into the store, a man with a similar build, complexion, hair line and facial features as defendant can be seen raising his arm toward another man who was backing away toward the counter. At that point, a man wearing a striped ski cap appears to be unsuccessfully trying to keep the peace. The man resembling Wallace is seen on camera with his arm raised in a shooting posture. The man he is pointing at ducks suddenly and then runs out of the store. Consistent with a reaction to gun fire, the group can be seen suddenly and abruptly disbursing. The video is also consistent with Det. Hawkins' testimony that police later responded to the scene and ultimately collected the surveillance video.

### A. *Identification by the shooting victim*

Det. Hawkins was subsequently advised by Sergeant Mark McMurray that he had received information from a confidential source that Wallace was involved in the shooting (the "CS"). According to Det. Hawkins, the CS was a mere tipster in that he/she was not an eyewitness to the shooting, but merely called in to provide information. Sergeant McMurray provided Det. Hawkins with Wallace's pedigree information which Hawkins then used to locate a booking photo of Wallace. Det. Hawkins compared the booking photo of Wallace to the video surveillance and statements describing the shooter and found that they were very similar. He then

performed a computer inquiry and learned that Wallace has used the moniker "money" in the past. Det. Hawkins prepared a computer-generated photo lineup using Wallace's pedigree information, height, weight, complexion, hair style, facial hair and other descriptors. *See* Govt. Exh. 1A.

On February 13, 2016, Det. Hawkins and another officer, Det. Murphy, took the photo lineup to the victim who had been admitted to St. Louis University Hospital. Det. Murphy served as a "blind administrator" – in that he had little to no knowledge about the case and did not know the identity of the suspect. Det. Murphy presented the photo lineup to the victim and told the victim that the suspect may or may not be in the photographs being shown. The victim was asked to look through all of the photographs and let Det. Murphy know if he recognized anyone.

When he saw Wallace's photograph, the victim almost immediately identified Wallace stating "there's money right there." The victim stated that he knew Wallace from his neighborhood and new Wallace as "money." At the officer's direction, the victim circled Wallace's face and initialed and dated the photograph. The victim also completed a form confirming his identification in writing and indicating that he was certain he made a correct identification. *See* Govt. Exh. 1B. Although he was in critical care, the victim was breathing on his own power, was coherent, and appeared to understand what was going on.

The victim again confirmed his identification of Wallace on February 19, 2016, at the Circuit Attorney's Office. Although a physical lineup was planned on that date, the lineup did not occur because Wallace was uncooperative with police.

   **B.** *Identification by an eyewitness*

In May 2016, ATF Special Agent Rachel Capps ("S.A. Capps") prepared a photographic lineup to show to an eyewitness to the shooting. *See* Govt. Ex. 2. The witness worked in the

store's kitchen as a cook and had observed the incident from just a few feet away. S.A. Capps utilized a computer program to generate a photographic lineup based on a booking photograph of Wallace and other descriptors such as build, complexion and hair.

S.A. Capps presented the photo lineup to the witness who made a positive identification of Wallace by identifying him as G. Money and pointing to his photograph. At S.A. Capps's direction, the witness circled, initialed, and dated Wallace's photograph. The witness did not hesitate in making the identification and indicated that he was previously familiar with Wallace who was a frequent customer of the store.

## II. MOTION FOR THE TRUE IDENTITY OF THE VICTIM AND OTHER GOVERNMENT WITNESSES (DOC. 37)

At the time of the hearing, defense counsel argued that *Roviaro v. U.S.,* 353 U.S. 53, 60 (1957) governs defendant's motion for the identity of the confidential source and prospective government witnesses. In *Roviaro v. U.S.,* 353 U.S. 53, 60 (1957), the Supreme Court recognized the government's privilege to withhold the identity of informants. This privilege is not absolute. An accused who seeks disclosure of an informant's identity has the burden of showing that the need for disclosure outweighs the government's privilege to withhold the identity of its confidential informants. *U.S. v. Lapsley,* 263 F.3d 839, (8th Cir. 2001). This requirement strikes a balance between the public interest in protecting the source of information and the defendant's right to prepare a defense. *See Rovario,* 353 U.S. at 62.

"The threshold issue in determining whether disclosure is required emerges from whether the informant is a material witness." *United States v. Faulkner*, 826 F.3d 1139, 1147 (8th Cir. 2016) (citing *Carpenter v. Lock,* 257 F.3d 775, 779 (8th Cir. 2001)). When an informant is a "tipster" with no firsthand information who merely information to the government, disclosure is typically not required. *See id.* (informant was "mere tipster" not subject to disclosure where

informant provided valuable initial information for officers to obtain warrants but did not witness or participate in any of the charged offenses)*; see also United States v. Crenshaw,* 359 F.3d 977, 1005 (8th Cir. 2004) (court did not abuse its discretion in denying motion for disclosure where informant had no first-hand knowledge of events surrounding shooting). *U.S. v. Lapsley,* 334 F.3d 762, 764 (8th Cir. 2003).

The undisputed evidence in this case is that the CS was a tipster who contacted police with information indicating that he/she believed Wallace was the shooter or was involved in the incident. Detective Hawkins testified credibly that, based on his discussion with the officer who spoke with the CS, the CS was not an eyewitness to the incident. Indeed, during oral argument defense counsel appeared to concede that *Roviaro* does not authorize disclosure of the confidential source where, as here, the undisputed evidence shows that the source was merely a "tipster" and not an eyewitness or otherwise a material witness to the government's case. Based on the record made in open court at the time of the hearing, the undersigned agrees that there is no legal basis for granting Wallace's motion for disclosure of the identity of the confidential source and so will enter an order denying that motion.

Notwithstanding Wallace's assertions to the contrary, *Roviaro* also fails to provide a basis for requiring the United States to disclose the identity of the alleged victim and other prospective government witnesses. The question in *Roviaro* was to what extent, and under what circumstances, must the government's privilege to withhold from disclosure the identity of persons who furnish information regarding violations of law to police yield to a defendant's right to prepare a defense. *Roviaro* simply does not answer whether, and to what extent, a defendant is entitled to pretrial disclosure of the identity of prospective government witnesses.

Instead, the United States must comply with the requirements of pretrial disclosure set out in Fed. R. Crim. P. 16(a). Although the court has the authority and the discretion to order the government to disclose the identities of its trial witnesses before trial, Rule 16(a) does not generally *require* the government to disclose the identities of its trial witnesses before trial. *Weatherford v. Bursey,* 429 U.S. 545, 559-60, (1977) (recognizing that there is no general constitutional right to discovery in criminal cases, the Court held "It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably."); *United States v. DeCoteau,* 186 F.3d 1008, 1010 n. 2 (8th Cir.1999); *United States v. White,* 750 F.2d 726, 728 (8th Cir.1984); *United States v. Pelton,* 578 F.2d 701, 708 (8th Cir.1978).

There is, as yet, no trial setting in this case. The United States has already offered to disclose its fact witnesses to defendant at some point prior to trial. However, due to safety concerns for the victim and eyewitnesses, coupled with uncertainty that any of the witnesses (including the victim) will appear and testify at a trial, the United States is unwilling to reveal the identity of the witnesses this far ahead of any trial date. At the hearing, defendant conceded that his ability to pursue pretrial motions was not hampered by the lack of witness disclosure, and defendant has offered no compelling factual or legal argument to explain why the United States should be compelled to disclose the identities of its actual or potential trial witnesses at this juncture. As such, the motion to compel disclosure of government witnesses, including the alleged victim, will be denied.

### III. MOTION TO SUPPRESS OUT OF COURT IDENTIFICATION (DOC. 36)

Although defendant is not explicit, in moving to suppress the out-of-court identifications by the victim and eyewitness, defendant appears to argue that the photo array lineups prepared by Det. Hawkins and/or S.A. Capps do not match his physical characteristics and are therefore

unduly suggestive and unreliable. *See* Deft.'s Mtn. and Mem. To Suppress, Doc. 36, at p. 1. A criminal defendant's due process right to exclude identification testimony resulting from unnecessarily suggestive procedures that might lead to an irreparably mistaken identification is well-established. *Stovall v. Denno,* 388 U.S. 293, 302 (1967). Because "[i]t is the likelihood of misidentification which violates a defendant's right to due process," the focus of the due process inquiry is on the reliability of the identification testimony, rather than the suggestiveness of the identification procedure. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). As such, an identification derived from unnecessarily suggestive procedures will not be excluded if the totality of the circumstances indicates that the identification is reliable. *Manson v. Brathwaite*, 432 U.S. 98, 107, 114-16 (1977).

Courts use a two-step analysis in determining whether the Due Process Clause of the Fifth Amendment requires suppression of an eyewitness identification allegedly tainted by police arrangement. *Perry v. New Hampshire,* 132 S. Ct. 716, 724 (2012); *Biggers*, 409 U.S. at 198-99. First, defendant must prove the identification procedure was impermissibly suggestive. Due process concerns "arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry,* 132 S. Ct. at 724. Second, even if the identification procedure was impermissibly suggestive, the court must consider whether the testimony was nonetheless reliable. "When no improper law enforcement activity is involved," reliability is better tested with tools such as "the presence of counsel at post-indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Perry*, 132 S.Ct. at 721.

In the present case, defendant has failed to prove that the identification procedures used by either Det. Hawkins or S.A. Capps were impermissibly suggestive. Both officers used a computer program to generate a photographic lineup based on a booking photograph of Wallace and other descriptors such as build, complexion and hair. In each instance, the resulting photographic array contained a photograph of defendant and five other distractors. Although there were some differences between defendant's photographs and those of the distractors, all six men had similar facial features, similar hair, including facial hair, and similar skin tone. *See* Govt. Exhs. 1A and 2. None of the officers who presented the photo array said anything to either the victim or witness to suggest which individual, if any, was the target of the investigation. Instead, they instructed the victim and the witness that the individual involved in the shooting may or may not be in the photo lineup and that they were not required to pick one of the subjects in the photo lineup.

Based on these facts, any discrepancies that may exist between defendant's photographs and the photographs of the distractors are not sufficient to support a finding that the procedure was impermissibly suggestive. *See United States v. Gilbert,* 721 F.3d 1000, 1006-07 (8th Cir. 2013) (holding photo array not impermissibly suggestive where it contained 6 men with similar facial features and similar skin tones even though defendant was only one shown shirtless and with a gold chain). Because I find that the photographic identification procedures used in this case were not impermissibly suggestive, defendant's motion to suppress the identifications should be denied on this ground alone. *See Perry*, 132 S.Ct. at 725-26.

Even if the photographic lineups could somehow be construed as impermissibly suggestive, defendant's motion to suppress should be denied because the identifications were reliable under the totality of the circumstances. In determining reliability, courts use the five

*Biggers* factors: (1) the witness's opportunity to view the culprit at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's description of the culprit prior to the identification; (4) the witness's level of certainty when identifying the defendant at the confrontations; and (5) the length of time between the crime and confrontation. *Biggers,* 409 U.S. at 199-200; *Manson,* 432 U.S. at 115-16; *United States v. Hadley,* 671 F.2d 1112, 1115-16 (8th Cir. 1982). Courts also consider the strength of other evidence against the defendant when making a reliability determination. *See United States v. Rogers,* 73 F.3d 774, 778 (8th Cir. 1996) (identification reliable where at least two other witnesses identified defendant).

Based on the circumstances here, *Biggers* factors 1, 2, 4 and 5 strongly support a finding that the victim's identification was reliable. Based on the surveillance video, it is evident that the victim had an extensive interaction with the shooter prior to the shooting. The video also shows that the victim was facing the shooter and in very close proximity to him at the time of the shooting. The victim made the identification just two days after the shooting. He identified defendant as the shooter immediately upon seeing his photograph and told police he knew defendant from the neighborhood.

Similarly, factors 1, 2, & 4 also strongly support a finding that the eyewitness's identification was reliable. The witness worked in the store where the incident occurred and was just a few feet away when he witnessed the shooting. Like the victim, the eyewitness almost immediately made a positive identification of defendant and stated he knew defendant prior to the shooting because he was a frequent customer. Although three months had elapsed between the time of the shooting and the eyewitness identification, courts have held identifications reliable where a significantly greater period of time elapsed between the incident and

identification. *See, e.g., Rivera-Rivera,* 555 F.3d 277, 284 (1st Cir. 2009) (six months); *United States v. Henderson*, 320 F.3d 92, 100, 101 (1st Cir. 2003) (two and one-half years); *United States v. Flores-Rivera,* 56 F.3d 319, 331 (1st Cir. 1995) (seven years); *United States v. Peterson,* 411 Fed.Appx. 857, 865 (6th Cir. 2011) (one year and eight months); *United States v. Clark,* 319 Fed.Appx. 395, 402-03 (6th Cir. 2009) (five years).

Finally, the fact that there are two different witness identifications, video surveillance, and other witness statements in this case cannot be ignored in assessing whether the identifications are reliable under the totality of the circumstances. Although some segments of the surveillance video are less than clear, two of the cameras picked up clear images of both the shooting and the shooter. When the entire record is considered, the evidence as a whole tends to support, rather than cast doubt on, the reliability of the out-of-court identifications made by the eyewitness and victim in this case.

## CONCLUSION

For all of the foregoing reasons, defendant's motion for disclosure of the identity of the confidential source, victim, and other witnesses should be denied as should defendant's motion to suppress out-of-court identifications.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of November, 2016.

11